UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:03CV-00072-ERG

EDNA WADE AGEE, an Individual,
and JARED E. SHAFER, as Personal
Representative of the Estate of Ottie L. Wade                                    PLAINTIFFS

VS.

ANDREA DENISE MANNING AMOS
and ANDREW MADISON MANNING                                                       DEFENDANTS

## MEMORANDUM OPINION

Before the Court is the Motion for Summary Judgment of Defendants Andrea Denise Manning Amos (hereinafter "Amos") and Andrew Madison Manning (hereinafter "Manning") (DN 50) as to all claims asserted in this action by the Plaintiffs; the Response of the Plaintiffs Edna Wade Agee (hereinafter "Agee") and Jared E. Shafer, Personal Representative of the Ottie Wade Estate (hereinafter "the Estate") (DN 57) objecting; and, the Reply of Amos and Manning to the Response (DN 59). The matter stands ripe for ruling.

For reasons set forth below, the Court grants Defendants' motion for summary judgment.

## STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Co.</u>, 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

BACKGROUND

The Court is able to decide the issues before it by reference to Agee and the Estate's Second Amended Complaint (DN 21) and Amos and Manning's Answer (DN 22), and particularly by reference to the unchallenged recitations made by the parties and contained in their respective memoranda filed in support of their positions relative to this motion.

The Court finds the following matters to be pertinent to the resolution of the present motion and are accepted by the parties as true:

1. Edna Agee is the sister of Ottie Wade, who died a resident of Nevada. Agee resides in Tennessee.

2. Andrea Amos is a resident of Kentucky and is the granddaughter of Edna Agee and the grandniece of the deceased, Ottie Wade. Andrew Manning is Andrea Amos' father.

3. Jared E. Shafer is the personal representative of the Estate of Ottie Wade, having been appointed by a court of competent jurisdiction in Nevada, again, the domicile of Ottie Wade when she died.

4. The claim of Agee and the Estate against Amos and Manning, as set forth in the Second Amended Complaint (DN 21) herein, is very simple. It alleges that Amos and Manning, acting together, and immediately following the death of Ottie Wade on July 29, 2002, misappropriated certain valuable property belonging to the Ottie Wade Estate.

5. At the time of the filing of this action on March 28, 2003, Agee claimed a share of the estate as an heir-at-law of Ottie Wade, and that her share was diminished by Amos and Manning's wrongful acts.

6. Prior to the filing of the action herein, competing claims to the net assets of the Ottie Wade Estate had been asserted by various persons. These claims were asserted in the Nevada courts, first before the Probate Commission, and then in the District Court of Clark County, Nevada, a trial court of general jurisdiction within the state of Nevada.

7. In the Nevada courts, Edna Agee and Bonnie Smith, another relation of Ottie Wade, claimed Ottie Wade died intestate, and that they were the only proper heirs-at-law of the Ottie Wade estate. Norman Lincoln, unrelated to Ottie Wade, submitted a will, claiming it to be the last will and testament of Ottie Wade, and that he was the sole beneficiary under the will of Ottie L.

Wade and the Ottie L. Wade Family Trust dated April 7, 2000. Finally, Andrea Amos tendered a document purporting to be the holographic will of Ottie Wade, wherein Amos claimed to be the sole devisee of the Wade Estate.

8. In addition to asserting competing claims to the Estate assets, some of these parties brought claims and cross-claims against one another sounding in tort, including claims of racketeering under Nevada RICO laws.

9. On November 8, 2002, Edna W. Agee and Bonnie Smith, Jared E. Shafer, Executor of the Ottie L. Wade Estate, and Norman Lincoln executed a document entitled SETTLEMENT AGREEMENT, which agreement sets forth certain terms and conditions whereby those persons signatory to the agreement would divide the net assets of the Wade Estate. This document (the SETTLEMENT AGREEMENT) is appended hereto as Exhibit A. This document does not purport to settle the claimed interest of Andrea Amos.

10. On May 19, 2005, Jared E. Shafer, Executor of the Estate, filed a document entitled Petition for Instructions in the District Court, Clark County, Nevada, the court referenced above where the various claims were pending. This petition referenced the SETTLEMENT AGREEMENT described here in paragraph 9 and further stated:

> "Recent discussions amongst the parties has led to LINCOLN, SMITH and AMOS reaching agreement to exchange mutual releases from any and all claims known and unknown with regard to the estate of Ottie L. Wade. LINCOLN, SMITH, and AMOS have also agreed to release all claims known and unknown against the ESTATE in Nevada.
>
> The Agreement in Exhibit '1' [the SETTLEMENT AGREEMENT] contemplates all heirs assigning their rights to AGEE to pursue AMOS if it is deemed that the pursuit is fruitless."

This petition requested the Court's instructions whether the Estate should join

4

Lincoln and Smith in releasing and indemnifying Amos in return for Amos' release of the Estate, and whether the Estates should withdraw from the Kentucky litigation (the action pending here).

11. This petition resulted in a Nevada District Court hearing conducted June 14, 2005. All parties to the action pending in this Court, save Andrew Manning, were before the Nevada District Court and represented by counsel, as were other parties interested in the Estate but not involved in the action pending before this Court.

12. This hearing resulted in the Nevada District Court issuing an Order entered February 14, 2006, a certified copy of which has been filed in the record herein. This order, *inter alia*, purports to dismiss the petition for probate of the holographic will tendered by Andrea Amos, confirms and approves the SETTLEMENT AGREEMENT (described above in paragraph 9), dismisses the civil action, returns jurisdiction to the probate commissioner, revokes certain letters of special administration, and authorizes the Estate's withdrawal from all litigation.

13. All parties to this federal action, by virtue of the arguments contained within their respective memoranda in support of and in opposition to the present motion for summary judgment, acknowledge the entry and finality of this February 14, 2006 Nevada District Court Order as it relates to and affects their rights in the present federal action. A copy of the Nevada District Court Order (the "Nevada Order") of February 14, 2006 is appended hereto as Exhibit B.

14. The Nevada Order provided, *inter alia*, "that the Estate is to be settled in accordance with the Settlement Agreement entered in to by SHAFER, LINCOLN, AGEE, BONNIE SMITH, and their respective counsel." This is the same SETTLEMENT AGREEMENT referenced in paragraph 9 above, and appended as Exhibit A herein.

15. This SETTLEMENT AGREEMENT made certain recitations, among others,

5

concerning the beliefs of the signatories that Andrea Amos may unlawfully be in possession of certain Estate assets, and was an issue that should be pursued by Lincoln and Patricia Munhall, counsel for Lincoln. A footnote to this recitation provided: "To the extent that the further investigation and recovery of assets that may be in the possession of Amos is deemed to be an extraordinary expense that the estate should not incur, <u>the assignment of the right to investigate, pursue, and/or criminally prosecute Amos may be assigned to Edna [Agee], and Edna shall pay all expenses relevant thereto.</u>" (emphasis added) (See Exhibit A, p. 3).

16. Under section IV of the SETTLEMENT AGREEMENT (Distribution of Net Estate Assets) it was agreed Edna Agee, Bonnie Smith, and Norman Lincoln would equally divide the net assets, with certain exceptions, one of which provided: "In the event that the Executor [Jared Shafer] deems the further pursuit of the estate assets held by Amos fiscally unsound, <u>the right to pursue and recover assets and bring charges against Amos will be assigned exclusively to Edna Agee</u>." (emphasis added).

17. The Nevada Order also provided the various civil actions pending in that court would be dismissed; that the probate case would be returned to probate for closing; and, that certain letters of administration were revoked.

18. The Nevada Order also provided: "...that Personal Administrator, Jared E. Shafer is authorized and directed to withdraw the estate from the Kentucky federal action <u>leaving Ms. Agee as the sole remaining Plaintiff</u>..." (emphasis added).

19. The Nevada Order further provided the Estate was released from any claims made against it by Andrea Amos, and further "...<u>That Andrea Amos [is] released and indemnified from any action by, against, or concerning...The Estate of Ottie Wade [or] the Personal</u>

6

Administrator of the Estate of Ottie Wade...'' (emphasis added).

20. Finally, the Nevada Order provided "...that the parties will transfer all individual causes of action Edna Agee may have to the Federal proceeding in Kentucky, and the Federal Judge may rule on Edna Agee's RICO claim against Amos."

DISCUSSION

Defendants first argue this Court lacks subject matter jurisdiction because a federal court lacks such jurisdiction involving probate matters, citing Lepard v. NBD Bank, 384 F.3d 232 (6th Cir. 2004). A recent Supreme Court decision reins in this probate exception. Specifically, the Supreme Court commented as follows:

> "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."

Marshall v. Marshall, 126 S.Ct. 1735, 1739 (2006).

The case here does not involve the probate or annulment of a will nor the administration of Ottie Wade's Estate. This case clearly does not involve property in the custody of the appropriate Nevada state probate court, in fact, it is alleged to involve property in the custody of persons who have misappropriated it from the estate. The present case sounds in tort, and clearly, the probate exception to federal jurisdiction does not apply.

Secondly, defendants argue Edna Agee has no standing to bring the present action against Amos and Manning, as the right to sue these Defendants for conversion of estate assets, as mandated by Nevada Revised Statute 143.070, is exclusively vested in the personal representative

7

of the Estate, and that the Estate has settled all claims by or against Amos as evidenced by the terms of the Nevada Order.

The Court must answer two questions in ruling upon the present motion for summary judgment: (1) Does Edna Agee have the right to sue Amos and Manning on behalf of the Estate for conversion of Estate assets? (2) If not, do the provisions of the Nevada Order grant her an independent cause of action?

If both questions are answered in the negative, summary judgment must be awarded to Defendants Amos and Manning.

> (1) DOES EDNA AGEE HAVE THE RIGHT TO SUE AMOS AND MANNING ON BEHALF OF THE ESTATE FOR CONVERSION OF ESTATE ASSETS?

If it is true that Andrea Amos and her father, Andrew Manning, misappropriated assets of the Estate of Ottie Wade, it is the Estate that suffered the direct injury, and this is what the complaint alleges – that Amos and Manning looted the Estate. The question to be answered here is whether Edna Agee, an heir-at-law, can sue Amos and Manning on behalf of the Estate. Clearly, she cannot. She lacks the capacity to bring such an action. Firestone v. Galbreath, 976 F.2d 279, 283 (6th Cir. 1992).

Pursuant to Fed.R.Civ.P. 17(b), the law of the state in which the district court sits governs a party's right to sue in a representative capacity. Firestone, 976 F.2d at 283. Thus, we must look to the law of Kentucky to decide the issue of whether Edna Agee has the capacity to bring the present action.

Under Kentucky law it is said:

> "'Title to the personal property of a decedent vests in his personal representative for purposes of administration, and devisees or heirs

> acquire no title to it until there has been a settlement of the estate. A devisee must look to the executor or administrator for the payment of his bounty and not directly to the debtors of the deceased. The right of action against those owing the estate is in the personal representative and not in the devisee or heir, and, if suit is necessary, it must be brought by the personal representative. It is only where he refuses to bring the action on demand of the devisee or heir that the latter can do so, and in that event the personal representative must be made the party to the suit.'"

Moore's Adm'x v. Brookins, 263 Ky. 519, 92 S.W.2d 813, 813-814 (Ky.App. 1936) (quoting Burchett v. Burchett, 226 Ky. 5, 10 S.W.2d 460 (Ky.App. 1928)); see also Fowler v. Rothrock's Ex'r, 261 Ky. 664, 88 S.W.2d 667 (Ky.App. 1935); Bennett v. Bennett's Adm'r, 134 Ky. 444, 120 S.W. 372 (Ky.App. 1909). Thus, it is clear Edna Agee lacks the capacity to sue Amos and Manning for conversion of estate assets.

The Plaintiff urges the Court to apply an exception to the general rule just stated, and rule that "...when a final accounting has been approved, the estate has been closed, and the administrator discharged...that the residuary legatees, or those otherwise entitled, may sue to collect claims that were left unrecovered when the estate was closed." Nunnally v. Wilder, 330 F.2d 843, 848 (D.C. Cir. 1964).

Nunnally, supra, does not state the Kentucky rule, and the Court notes Kentucky has not ruled on the issue. The Court further observes the only exception found in Kentucky is the one previously noted in Burchett, supra, wherein an heir or devisee may sue if upon demand, the personal representative refuses to enforce a claim, and then only by making the personal representative a party to the action. 10 S.W.2d at 460.

The rule followed in Nunnally, supra, is not binding authority, but merely persuasive. The rationale cited there for application of the exception, i.e., that the reasons which call for an

9

independent administrator, for the most part, have disappeared by the time the exception comes into play – is not apparent here. Among other reasons, the Nunnally court noted the expense of appointing a new administrator, with attendant fees and costs, can be avoided by allowing the sole existing residuary legatee of the estate to file a suit the administrator could have brought. 330 F.2d at 848.

In the first place, Edna Agee is not the sole estate beneficiary. If allowed to sue on behalf of the estate, and assuming she were successful in retrieving ill-gotten gains from Amos and Manning, the proceeds from the litigation would necessarily pass through the Estate and into the hands of all Estate beneficiaries, not just Edna Agee. The Estate would necessarily require reopening in the Nevada courts.

Secondly, the claims being pressed here by Agee were not unknown to the Ottie Wade estate. In fact, the Estate *is* a party to this action. However, as is apparent from the probate and other legal proceedings in Nevada, this is litigation the Estate has rejected in favor of gaining a mutual release from Andrea Amos, who had asserted her own claim to the net estate. In short, if this Court were inclined to follow the rule applied in Nunnally, which it is not, that inclination disappears in the face of attempting to find a rational basis for doing so.

### (2) DO THE PROVISIONS OF THE NEVADA ORDER GRANT EDNA AGEE AN INDEPENDENT CAUSE OF ACTION?

It is mandatory this Court give Full Faith and Credit to all judicial proceedings in the Nevada District Court. U.S.C.A. Const. Art. IV Section 1; 28 U.S.C.A. Section 1738. Plainly, the Nevada Order is fertile ground for confusion. First, the Nevada District Court ordered the estate be settled on the terms and conditions of the SETTLEMENT AGREEMENT. This agreement unquestionably contained language wherein the Estate, given certain conditions, would "assign

exclusively to Edna Agee" the right to pursue Amos and recover from her assets belonging to the Estate.[1] SETTLEMENT AGREEMENT, para IV, part C., Exhibit A.

On the other hand, the Nevada Order directs the Estate and Amos to mutually release any and all claims related to the Estate of Ottie Wade they might have, one against the other. In fact, the Nevada Order states "...that Andrea Amos and her counsel are <u>released</u> and <u>indemnified</u> from any action <u>by, against, or concerning</u> ...The Estate of Ottie Wade, the Personal Administrator of the Estate of Ottie Wade, or any counsel associated therewith..." (Emphasis added).

The SETTLEMENT AGREEMENT acknowledged it would be governed by the Laws of Nevada. SETTLEMENT AGREEMENT, Sec. VII. Nevada law recognizes the right to assign or transfer a chose in action, that is, a personal right not reduced into possession, but recoverable by a suit at law. NRS 148.210; <u>Pelton v. Meeks</u>, 993 F.Supp. 804, 806 (D.C. Nev. 1998).

But apparently at no time has Jared Shafer, Personal Administrator of the Ottie Wade Estate, ever executed the contemplated assignment to Edna Agee. None has been produced to this Court. Since the Nevada District Court has ordered the Estate to release and indemnify Amos from any action concerning the Estate, the Estate is powerless to execute such an assignment in favor of Agee, although the same Order gave tacit approval to potential for such an assignment to be executed.

Agee argues that the final language of the Nevada Order brings everything into focus. This language states: "...it is FURTHER ORDERED that the parties will transfer all individual

---

[1] However, the agreement makes no mention of assigning any rights the Estate may have to pursue claims against Manning.

11

causes of action Edna Agee may have to the Federal proceeding in Kentucky, and the Federal Judge may rule on Edna Agee's RICO claim against Amos." Agee strongly argues that this language, coupled with the Nevada District Court's direction (1) that the Estate be settled in accordance with the SETTLEMENT AGREEMENT, and (2) that Jared Shafer, the Personal Administrator of the Estate withdraw from the Kentucky litigation, leaving Edna Agee as the sole remaining plaintiff – has the *effect* of creating the assignment she lacks.

The Court disagrees. The Nevada Order gives no definition to 'the individual causes of action Edna Agee <u>may</u> have", only that whatever they may be, the parties "transfer" them. The only potential cause of action identified is Agee's Nevada RICO claim.

No doubt Edna Agee would have the right to pursue the present action against Andrea Amos if Ms. Agee were possessed of a valid assignment from the Estate, but such an assignment does not exist.

CONCLUSION

In summary, Edna Agee lacks the capacity to bring the present action on behalf of the Estate and has further failed to establish she may bring this action by assignment of such right from the Estate, and summary judgment must be granted in favor of Amos and Manning with respect to all claims asserted by Edna Agee.

While the Estate does possess the right to pursue these present claims, it has opted to settle all claims with respect to the Estate and remove itself from this action. See, Nevada Order, Exhibit B, p. 2. Thus, the claims asserted by the Estate must be dismissed as well.

For the foregoing reasons, the Court will in a separate order grant Defendants' motion

for summary judgment as to all claims asserted in this action by the Plaintiffs.

Copies: Counsel